IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MICHAEL WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 121-053 |
| | ) | |
| PATRICK ANN JENKINS, Nurse, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, commenced the above-captioned civil rights case *pro se* and *in forma pauperis* ("IFP"). Defendant filed a pre-answer motion to dismiss, (doc. no. 34), which Plaintiff opposes, (doc. no. 36). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**.

I.   BACKGROUND

   A.   **Procedural History**

Plaintiff originally named six Defendants in his amended complaint, all of whom worked at ASMP. (See doc. no. 10.) As Plaintiff is proceeding IFP, the Court screened the pleading, and all but two Defendants, along with all official capacity claims for monetary damages, were dismissed from the case. (See doc. nos. 15, 21.) The Court permitted

Plaintiff's Eighth Amendment claim for deliberate indifference to proceed against Defendants Jenkins and Redd.  (Doc. no. 13.)  Defendant Redd was dismissed without prejudice because she was not timely served.  (See doc. nos. 31, 33.)

Defendant Jenkins, a nurse at ASMP, moves to dismiss, arguing Plaintiff failed to properly exhaust his administrative remedies prior to filing his complaint.  (See doc. no. 34-1.)  Plaintiff, on the other hand, argues he timely filed a grievance and appealed the rejection of his grievance.  (Doc. no. 36.)

B.  **Amended Complaint Allegations**

With respect to Defendant Jenkins, Plaintiff alleges the following facts in his amended complaint.  On September 11, 2019, Plaintiff "stuck an 18 ½ [inch] wire into [his] neck-throat-chest-heart-lungs 7 ½ into [his] lungs," and Defendant Jenkins refused to give him the medical treatment he needed.  (Doc. no. 10, p. 6.)  When Plaintiff complained about chest pain that was causing him breathing difficulty, Defendant Jenkins ignored his complaints for approximately four hours.  (Id.)  Plaintiff "made it to the hospital just in time" to go straight into surgery.  (Id.)

As to the issue of exhaustion of administrative remedies, Plaintiff states that prior to filing a grievance about the incident, Plaintiff "went straight to" four separate ASMP supervisors, and they all told him they would look into what happened on September 11, 2019.  (Id. at 9.)  However, he never heard anything back from these four supervisors, and ASMP Warden Philbin denied Plaintiff's grievance.  (Id. at 8-9.)  Plaintiff seeks monetary damages and a direction to Defendant "to do . . . her JOB[]."  (Id. at 6.)

### C. Plaintiff's Relevant Grievance History

In support of the motion to dismiss, Defendant produced the affidavit of Barbra Colon, Chief Counselor at ASMP, whose responsibilities include "acting as the Grievance Coordinator to ensure compliance with the Grievance SOP [Standard Operating Procedure] . . . coordinate timely investigation and response to inmate grievances, and maintain information and records regarding inmate grievances." (See doc. no. 34-2, Colon Aff. ¶ 2.) Ms. Colon is "familiar with the Grievance SOP and the practices of the Department of Corrections as to inmate grievances [filed] under that document." (Id. ¶ 3.) Ms. Colon has identified three grievances Plaintiff filed classified as "Staff Negligence" or "Medical" during the time period of September 2019 through March 2021: Grievance Numbers 297234, 311198, and 320783.[1] (Id. ¶ 11 & Ex. 2.) The three other grievances filed during the same time period were classified as "Food Service" or "Missing/Confiscated Property": Grievance Numbers 301458, 306864, and 306866. (Id.) Plaintiff's grievance history was obtained from the central database, kept per the requirements of the Grievance SOP, which shows "all grievances filed by an inmate during his incarceration, including grievances from all facilities where the inmate has been incarcerated." (Id.)

Specific to the deliberate indifference forming the basis for this lawsuit, Plaintiff filed Grievance Number 297234 on October 10, 2019, alleging Defendant Jenkins and another nurse watched and laughed as he stuck an 18.5-inch wire through his neck on September 11, 2019, and then left Plaintiff in his cell without medical attention for approximately 4.5 hours.

---

[1] This time period covers the date of alleged self-harm and deliberate indifference on September 11, 2019, and the date Plaintiff filed this lawsuit in March 2021. (See doc. nos. 1, 10.)

3

(Id. ¶ 12 & Exs. 2, 3.)  The grievance was rejected as untimely, and Plaintiff did not appeal the rejection.  (Id.)

Plaintiff filed Grievance Number 311198 on July 14, 2020, alleging he previously filed a grievance on September 20, 2019, regarding Defendant Jenkins and two other medical personnel who watched and laughed as he tried to commit suicide by pushing a wire in his neck and then left him in his cell without medical attention for approximately 4.5 hours.  (Id. ¶ 13 & Ex. 4.)  This grievance was also rejected as untimely, and Plaintiff did not appeal the rejection.  (Id.)

Plaintiff filed Grievance Number 320783, on February 17, 2021, alleging security violations by correctional officers and harassment by nurses who are not named as defendants in this case.  (Id. ¶ 14 & Ex. 5.)  After an investigation of the merits of Plaintiff's grievance, the warden denied the grievance for a lack of evidence supporting the allegations.  (Id.)  Plaintiff filed a Central Office Appeal of the warden's denial of the grievance, and that appeal was denied on March 22, 2021.  (Id.)

**II.   DISCUSSION**

 **A.   The Legal Framework for Determining Exhaustion**

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint

is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it

5

can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.

**B.     The Administrative Grievance Procedure**

As part of the affidavit of Ms. Colon, Defendant has provided a copy and explanation of the applicable Statewide Grievance Procedure, Policy Number ("PN") 227.02, which became effective May 10, 2019.  (Colon Aff. ¶¶ 3-10 & Ex. 1.)  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C).  The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor.  Id. § IV(C)(1)(c) & (d).  The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § IV(C)(1)(b).  The timeliness requirements of the

6

administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § (C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § (C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

    **C.**    **Plaintiff's Failure to Exhaust**

The events forming the basis of this lawsuit occurred on September 11, 2019. (Doc. no. 10, p. 6.) Plaintiff claims he filed a grievance on September 20, 2019, regarding the

7

alleged deliberate indifference by Defendant Jenkins, and that he gave an appeal form of the warden's rejection to his general population counselor. (Doc. no. 10, p. 8; doc. no. 36.) Defendant's motion to dismiss states Plaintiff filed two grievances related to the claims in the lawsuit, both were rejected as untimely, and Plaintiff did not appeal either rejection. (Colon Aff. ¶¶ 11 - 13 & Exs. 2 - 4.) The first such untimely grievance was not filed until October 10, 2019. (Id. ¶ 12 & Exs. 2, 3.) Because the factual allegations in the motion to dismiss and Plaintiff's response conflict, the Court takes Plaintiff's version of the facts as true and concludes dismissal is not appropriate at step one. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendant has the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Office, -F.4th-, No. 20-12605, 2022 WL 211498, at *6 (11th Cir. Jan. 25, 2022). Here, the factual dispute is straight-forward:[2] Plaintiff states he filed a grievance about the events forming the basis of the lawsuit on September 20, 2019. (Doc. no. 36.) Defendant says Plaintiff did not file any such grievance until October 10, 2019, and again on July 14, 2020. (Colon Aff. ¶¶ 12, 13 & Exs. 2 - 4.) Both grievances were rejected as untimely, and Plaintiff never filed a central office appeal of either rejection. (Id.)

---

[2]The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion might not be required: (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016). Here, Plaintiff does not contend administrative remedies were not available to him. To the contrary, Plaintiff echoes the statements in Ms. Colon's affidavit that the Grievance SOP is available to all inmates and provides clear guidelines to follow. (Colon Aff. ¶¶ 3, 4; doc. no. 36). Plaintiff does not make any allegation he was prevented from filing a grievance or appeal. Indeed, that is the heart of the dispute: whether Plaintiff filed a grievance, as he contends, on September 20, 2019.

The Court concludes Defendant has carried the burden to show Plaintiff did not exhaust his administrative remedies. In Plaintiff's original complaint, signed under penalty of perjury, Plaintiff stated he filed a grievance on September 20, and that grievance "was denied around about October." (Doc. no. 1, pp. 3, 9.) He did not provide any information about filing an appeal. (Id. at 4.) In his amended complaint, certified under Federal Rule of Civil Procedure 11, Plaintiff states he filed a grievance that was rejected as untimely and filed an appeal to which the central office had not responded. (Doc. no. 10, pp. 8-9, 12.) He further explained that prior to filing a grievance about the incident, Plaintiff "went straight to" four separate ASMP supervisors, and they all told him they would look into what happened on September 11, 2019. (Id. at 9.) However, he never heard anything back from these four supervisors. (Id. at 9.) Plaintiff did not provide a date when he filed the grievance he describes. (Id. at 8-9.)

When confronted with the sworn affidavit of Ms. Colon and the attached records of Plaintiff's grievance history showing no grievance was filed on September 20, 2019, as he had claimed, Plaintiff responded with an unsworn and unverified statement he filed a grievance on September 20, 2019, and gave an appeal grievance form to his counselor three days later on September 23, 2019. (Doc. no. 36.) He did not provide any grievance or appeal receipts in support of his assertion. Indeed, although Plaintiff attached to his original complaint a grievance receipt for the July 14, 2020 form, Grievance Number 311198,[3] (doc. no. 1, p. 11), and claims to have a receipt for another grievance he filed on a different topic in July of 2021, (doc. no. 36), he

---

[3]The Court notes the grievance appeal form Plaintiff attached to his original complaint is dated July 28, 2020, and does not have a signature showing receipt by a counselor. (Doc. no. 1, pp. 12-13.)

9

offers nothing to support his claim of filing a grievance on September 20, or an appeal on September 23.

Both Grievance Numbers 297234 and 311198 were rejected as untimely, and neither response addressed the merits of Plaintiff's allegations.[4] (Colon Aff. ¶¶ 12, 13 & Exs. 2 - 4.) Moreover, Plaintiff did not appeal either rejection. Thus, Plaintiff neither followed the proper procedural rules for filing a timely grievance nor did he exhaust the two-part grievance procedure. The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159.

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

---

[4]Plaintiff does not argue his untimeliness should have been excused for good cause under the Grievance SOP's definition, which includes "[a] legitimate reason involving unusual circumstances" such as " serious illness' or "being housed away from a facility covered by this procedure." PN 227.02 §§ III(C) & IV(C)(1)(b).

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

Therefore, the Court finds Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit.  Defendant has established (1) Plaintiff did not file a grievance on September 20, 2019; (2) the October 10, 2019 and July 14, 2020 grievances were untimely and rejected as such,[5] and (3) Plaintiff did not complete the two-step grievance process as to the untimely grievances because he did not file an appeal of either rejection.  Because Plaintiff did not exhaust his administrative remedies with respect to his claims forming the basis of this lawsuit prior to initiating this case, the motion to dismiss should be granted. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.  Because the case should be dismissed based on Plaintiff's failure to exhaust, the motion to amend to "add[] a new claim" by clarifying the "evil intent" of Defendant Jenkins's alleged deliberate indifference and increasing his requested amount of damages should be **DENIED AS MOOT**.  (Doc. no. 37.)

---

[5]When prison administrators consider the merits of a procedurally improper grievance, the exhaustion defense may be waived.  See Whatley v. Smith, 898 F.3d 1072, 1083-84 (11th Cir. 2018).  Here, however, as discussed above, the merits of untimely grievances were not considered, and the exhaustion defense has not been waived.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion to amend be **DENIED AS MOOT**, (doc. no. 37), Defendant's motion to dismiss be **GRANTED**, (doc. no. 34), and this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 1st day of February, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA